UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE LAMAR BAILEY, | No. 2:22-cv-1670 DB P |
| Plaintiff, | |
| v. | ORDER |
| J. CLASON, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Presently before the court is plaintiff's motion to proceed in forma pauperis (ECF No. 2) and his complaint for screening (ECF No. 1). For the reasons set forth below, the undersigned will grant the motion to proceed in forma pauperis and give plaintiff the option to proceed with the complaint as screened or to file an amended complaint.

**IN FORMA PAUPERIS**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). (ECF No. 2.) Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct

the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

**SCREENING**

**I.     Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227. Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell AtlanticCorp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic,

550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Here, the defendants must act under color of federal law. Bivens, 403 U.S. at 389. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**II.     Allegations in the Complaint**

The events giving rise to the claim occurred while plaintiff was incarcerated by the California Department of Corrections and Rehabilitation ("CDCR") housed at California State Prison, Sacramento ("CSP-SAC"). (ECF No. 1, 3.) Plaintiff has identified CSP-SAC correctional officers Calamia and J. Clason as defendants in this action. (Id. at 2.)

1      On March 26, 2020, plaintiff was housed on unit number 7, a unit designated for inmates
2 receiving mental health treatment. (Id. at 3.) Plaintiff states that on this date he was a participant
3 in the Mental Health Services Delivery System at the Enhanced Outpatient Level of Care.
4 Plaintiff notes this is the highest level of care available in CDCR.

5      Plaintiff alleges that he was using the telephone when he was approached by another
6 inmate. (Id.) "A long boisterous argument ensued in which both mens['] posture was highly
7 confrontational and appeared to be leading to an altercation." Officer Calamia was in the housing
8 unit and it was his "duty to control all movement in the building, to open and close doors, closely
9 monitor and observe the actions of the prisoners[,] and to provide coverage for the safety and
10 security of floor staff and inmates by employing a number of non-lethal and lethal weapons at his
11 disposal."

12     Plaintiff alleges Calamia observed the confrontation between plaintiff and the other
13 inmate. (Id.) He further states the other inmate noticed Calamia's observation and walked away
14 to the other side of the dayroom. "Several minutes later . . . Calamia called the other inmate over
15 and he stood there in a discussion with [correctional officer] Calamia and [correctional officer] J.
16 Clason for several minutes as [plaintiff] observed the three of them intermittantly [sic] looking
17 over at [plaintiff] and laughing." (Id. at 3-4.)

18     As plaintiff was ending his phone call, the inmate approached plaintiff and stabbed him in
19 the chest and the ear. (Id. at 4.) He states that "[i]nitially, both defendants just watched the
20 attack. Then as [plaintiff] began trying to fight the assailant off of [him], defendant J. Clason
21 walked over yelling 'break it up.'" (Id.) When the other inmate did not comply, Clason used OC
22 pepper spray directly at plaintiff as plaintiff was backing away from his attacker.

23     Plaintiff alleges defendants violated their responsibility as CDCR employees, failed to
24 protect him, and "inflicted further harm by deplo[y]ing OC pepper spray direction to his fresh
25 wounds and intentionally causing him enhanced pain from his injuries." (Id.)

26     Plaintiff alleges that "approximately 2 years prior to the March 26, 2020[,] stabbing" he
27 was placed in administrative segregation at CSP-SAC. (Id. at 5.) He states that when he received
28 a CDCR 1083 Property Inventory form, he noticed that most of his personal property, including

his television and other appliances, along with personal family photographs and legal documents, were missing. Plaintiff states he utilized the prison appeals process to address the issue of his lost property. (Id.) He further states that his mother contacted the office of CDCR Secretary Kathleen Allison regarding plaintiff's missing property and he was eventually compensated. He claims that several staff members on his housing facility were contacted by the Secretary's office regarding his missing property. When plaintiff returned from ad-seg "several staff members, including defendants, made disparaging comments to plaintiff[,] calling him a cry-baby and other debasing names." (Id. at 5.)

Plaintiff states that he attempted to explain to defendant Clason that he did not ask his mother to intervene. (Id. at 5-6.) He alleges "that led to defendants teasing him say, 'please don't tell yo mama on us' anytime they had a disagreement."

Plaintiff claims that both Calamia and Clason were "prejudiced against the Black inmates on the unit." (Id. at 6.) He further states that a month before the incident Clason called plaintiff "a 'crazy Black sonofabitch' for refusing to return to his cell until he received his medication." (Id.)

### III. Does Plaintiff State a Claim under § 1983?

#### A. Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994).

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." Labatad v. Corrections Corp. of American, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer, 511 U.S. at 832-33; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of

////

5

serious harm or injury to an inmate." Labatad, 714 F.3d at 1160 (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstrate in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis, and citations omitted).

Plaintiff has alleged Calamia observed an argument between plaintiff and another inmate. (ECF No. 1 at 3.) Thereafter, Calamia and Clason talked with the other inmate shortly before the inmate stabbed plaintiff. (Id. at 3-4.) Plaintiff alleges that Calamia and Clason observed the altercation and failed to intervene on plaintiff's behalf. (Id. at 4.) Plaintiff has alleged facts indicating that defendants failed to prevent an altercation before it occurred and failed to intervene once a fight began. Such allegations are sufficient to state a potentially cognizable failure to protect claim.

**B. Excessive Force**

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). For claims arising out of the use of excessive physical force, the issue is "'whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curium) (quoting Hudson, 503 U.S. at 7). The objective component of an Eighth Amendment claim is contextual and responsive to

1 contemporary standards of decency, Hudson, 503 U.S. at 8, and although de minimis uses of

2 force do not violate the Constitution, the malicious and sadistic use of force to cause harm always

3 violates contemporary standards of decency, regardless of whether or not significant injury is

4 evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10).

5     Plaintiff has alleged that officer Clason used pepper spray against him even though he was

6 backing away from his attacker. (ECF No. 1 at 4.) The court finds such allegations sufficient to

7 state a potentially cognizable excessive force claim against officer Clason. There are no

8 allegations in the complaint that would support a conclusion that Calamia used force against

9 plaintiff.

### C. Retaliation

11 "Within the prison context, a viable claim of First Amendment retaliation entails five

12 basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

13 because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

14 exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

15 correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and

16 citations omitted).

17     Plaintiff has alleged he filed an administrative appeal related to missing property. (ECF

18 No. 1 at 5.) Thereafter, his mother made inquiries of the office of the CDCR secretary who

19 contacted prison officials, including defendants. (Id.) Ultimately, defendants "teas[ed]" him and

20 allowed him to be attacked by a fellow inmate. (Id. at 6.) The allegations in the complaint do not

21 connect plaintiff's protected activity, filing a grievance, with the adverse action by defendants.

22 Rather, it appears the adverse action was based on plaintiff's mother's actions. In any amended

23 complaint, plaintiff should state facts showing that defendants' adverse actions were taken

24 because of plaintiff's protected activity.

### D. Equal Protection

26 The Equal Protection Clause requires that persons who are similarly situated be treated

27 alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Hartmann v. Calif.

28 Dept. of Corrs. and Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d

1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  State prison inmates retain a right to equal protection of the laws guaranteed by the Fourteenth Amendment.  Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Lee v. Washington, 390 U.S. 333, 334 (1968)).  An equal protection claim may be established by showing that defendants intentionally discriminated against plaintiff based on his membership in a protected class, Hartmann, 707 F.3d at 1123, or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601-02 (2008).

Plaintiff has alleged that defendants "were prejudiced against the Black inmates" on his unit.  (ECF No. 1 at 6.)  Such an allegation is too conclusory to state a potentially cognizable claim.  To state a potentially cognizable claim, plaintiff must state facts showing that officers treated him differently.  Additionally, verbal harassment is not sufficient to state a claim under § 1983.  See McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993) (verbal threats and name calling are not actionable under § 1983).

## AMENDING THE COMPLAINT

As set forth above, the complaint contains some cognizable and some non-cognizable claims.  Accordingly, plaintiff will have the option to proceed with the complaint as screened or to file an amended complaint.  Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights.  The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant.  The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting.  That said, plaintiff need not provide every detailed fact in support of his claims.  Rather, plaintiff should provide a short, plain statement of each claim.  See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true.  It must contain a request for particular relief.  Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right.

Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, all prior pleadings are superseded. Any amended complaint should contain all of the allegations related to his claim in this action. If plaintiff wishes to pursue his claims against the defendant, they must be set forth in the amended complaint.

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

**CONCLUSION**

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is granted.
2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order

////

       to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's complaint (ECF No. 1) states a potentially cognizable failure to protect claim against defendants Calamia and Clason and an excessive force claim against defendant Clason as set forth in Section III above. The complaint does not state any additional claims. Accordingly, plaintiff will have the option of proceeding with the complaint as screened or filing an amended complaint.

4. Within thirty (30) days of the date of this order, plaintiff shall fill out and return the attached form indicating how he would like to proceed in this action.

5. Plaintiff is warned that failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: March 1, 2023

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Civil Rights/S/bail1670.scrn

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE LAMAR BAILEY,<br><br>  Plaintiff,<br><br> v.<br><br>J. CLASON, et al.,<br><br>  Defendants. | No. 2:22-cv-1670 DB P<br><br>PLAINTIFF'S NOTICE ON HOW TO PROCEED |

Check one:

\_\_\_\_\_    Plaintiff wants to proceed immediately on his excessive force claim against defendant Clason and his failure to protect claim against defendants Clason and Calamia.  Plaintiff understands that by going forward without amending the complaint he is voluntarily dismissing all other claims.

\_\_\_\_\_    Plaintiff wants to amend the complaint.

DATED:_____

                                                                                            _____
                                                                                            Antoine Lamar Bailey
                                                                                            Plaintiff pro se

11